The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our first case, 421-0475, consolidated with 421-0635, People of the State of Illinois v. Jermaine Wallace. For the appellant, Mr. Draws, would you introduce yourself to us, please? Leo Draws with the Office of the State Appellate Defender, representing Appellant Jermaine Wallace. And for the appellee. My name is David DeManchin. I'm with the appellate prosecutor. I'm arguing on behalf of the state. Thank you. You may proceed, Mr. Draws. Thank you, and good afternoon, Your Honors. May it please the Court, Counsel, my name is Leo Draws, and I represent Appellant Jermaine Wallace. In light of the many issues in this appeal, I would like to offer a brief roadmap of this oral argument. First, the state's evidence that Mr. Wallace's license was suspended is lacking. Second, the state also failed to prove beyond a reasonable doubt that Mr. Wallace knew there were firearms in the glove box of his wife's car. Third, the trial court erred in two ways when deciding guilt or innocence in this case. The first way it erred is that it used a 17-year-old conviction against Mr. Wallace's credibility, running contrary to the Illinois Supreme Court's decision in People v. Montgomery. And the second way the trial court erred is that it used irrelevant facts occurring at a much later time and place to find that Mr. Wallace retroactively had knowledge of the firearms in the glove box. Additionally, and fourth, Officer Campbell did not have reasonable suspicion to stop Mr. Wallace, which I will argue time permitting. And finally, I want to mention that I have, in fact, conceded Argument 5, Mr. Wallace's term of MSR is correct. Turning to the sufficiency of the evidence as to whether Mr. Wallace's license was suspended at the time of the stop, the state's entire case on this charge is predicated on this letter from the state of Georgia, and it's just too ambiguous to prove anything. The important date to remember here is May 2, 2019. The state has to show that Mr. Wallace's license was suspended on that date. And simply put, I look at this letter, I see three or four dates here. None of them are May 2, 2019. In fact, none of them are within a year of that date. I think that's the state's first problem here with this letter. The second problem is the letter gives two requirements for Mr. Wallace to have his license reinstated. And after those two requirements, it says in bold letters, all capital letters, Requirement Met. There's just nothing here proving that Mr. Wallace's license was suspended at the time of the stop. Now turning to the unlawful possession of a weapon by a felon charges here, and that would be count one and two, the state did not prove the knowledge element. And under Illinois law, knowledge means conscious awareness. Mr. Wallace had to be consciously aware at the time of the stop. This is a fact-specific inquiry. So let's go ahead and look at the facts here. First, the car belonged to Mr. Wallace's wife, Dorothy Porter. They didn't live together at the time this occurred. Second, Mr. Wallace borrows the car in a hurry to attend the funeral of a family member out of state. He's in a hurry. He doesn't have time to check every nook and cranny of the car. Another fact, the guns belonged to Ms. Porter. She testified to this. She said she kept them in the glove box to keep them away from the younger children present in her home. She also said that she didn't tell Mr. Wallace about them, about their presence in the glove box. And some details about the glove box here. This isn't a situation where you just go ahead and pop the glove box open. It actually locks, and it locks with a key. And Ms. Porter testified that that process was not intuitive. She had to go back to the dealership to understand how it worked because the car had a key fob. It wasn't a normal key that you plug into the ignition. You have to pop the key out, unlock the glove box that way. Mr. Wallace maintained throughout this entire encounter, he never opened the glove box. He didn't know how it opened. He respected his wife's privacy. He had no idea the firearms were in there. Then we look at what Officer Campbell did when he finds them. He doesn't take any steps to preserve DNA, fingerprint, any kind of evidence like that. He handles them with his bare hands such that any latent fingerprints, nothing like that would have been helpful anyway. And I want to additionally note that the judge below said that the defense's arguments as to counts one and two, he called them compelling. Effectively, the state's argument here and at trial is that constructive possession equals knowledge. That's not enough. There are two distinct elements. They had to prove knowledge, and it didn't do so here. Counsel, I want to ask you about the traffic stop. Did you say the trial court erred by denying the motion to suppress? The officer involved who stopped the car, Deputy Campbell, said he had received a response to NCIC from Georgia authorities. The defendant's vehicle was not covered by insurance. Why wasn't that sufficient to justify the deputy to stop the car? Why didn't it count at least grounds for a Terry stop to have this further checked out? Your Honor, I want to note that this did not lead to reasonable suspicion. I would also further note that while I understand forfeiture is not a limitation on this court, it is a limitation on the parties. The state never at any point in the briefing argued that this NCIC or leads or whatever it may be flagging of this Georgia insurance requirement was in fact a valid basis for the stop. That is because it is an out-of-state insurance registration requirement. Officer Campbell testified about this. He seemed honestly a little bit unsure of himself about how exactly this requirement relates to Georgia because it's not a requirement in Illinois. Is it your contention the Illinois Vehicle Code doesn't require people who are driving vehicles registered out-of-state like here to have automobile insurance? Your Honor, the out-of-state vehicles, those driving out-of-state vehicles in Illinois, they are not subject to the same requirements in the Illinois Vehicular Code. And the reason for that is because the Illinois legislature in the Illinois Vehicular Code creates these carve outs because like window tinting, like, you know, maybe insurance registration requirements. Let me give you a specific section, counsel, section 7601 of the Illinois Vehicle Code, paragraph D. No person shall operate a motor vehicle registered in another state upon the highways of this state unless the vehicle is covered by a liability insurance policy. The operator of the vehicle shall carry within the vehicle evidence of the insurance. Why doesn't that cover here so that it says you have a car registered in Georgia, but you can't be operating it in Illinois unless you have insurance? Your Honor, the problem here is that, and there are additional carve out sections in the Illinois Vehicular Code. Specifically, I would point to 625 ILCS, and that would be section 53402, I cite to it in the brief. It deals with registration requirements and other requirements of vehicles in Illinois, and it has particular carve outs. It states, and I read any motor vehicle, it doesn't fall under these same requirements if it falls under one of these categories. And one of the categories is any motor vehicle, trailer, semi-trailer, or pole trailer operated interstate need not be registered in the state. And that's provided that their insurance is registered in Georgia. I also want to note that this isn't a flagging that says, hey, this car doesn't have insurance. What this is, is a Georgia specific requirement whereby the owner of the vehicle or the insurance company that provides insurance to the vehicle registers with the Georgia version of the Department of Motor Vehicles. It's not a flagging that says this vehicle doesn't have insurance. Because Officer Campbell said that, you know, normally, I mean, you can't tell that. You can't tell when you drive up along a car, when you drive alongside a car, that it doesn't have insurance. Well, Campbell said he received information through NCIC from the Georgia authorities that the vehicle was not covered by insurance. First question is, is there any reason that he couldn't place reliability upon that information? Again, Your Honor, in terms of answering that question, is a LEEDS flagging, an NCI flagging, is that reliable? Yes, I don't know any reason that it necessarily wouldn't be in that circumstance. Given that it's reliable, it's reliable information that this car bearing Georgia plates, according to Georgia authorities, was not covered by insurance. Why wasn't that enough for a reasonable, articulable basis to stop the car and see if it was otherwise in compliance with the Illinois statute that I just read to you? Namely, no person shall operate a motor vehicle registered in another state upon the highways of this state unless the vehicle is covered by a liability insurance policy. Again, Your Honor, is there any reason to think maybe this isn't covered by a liability insurance policy? It doesn't lead to reasonable suspicion here, Your Honor. This is an out-of-state requirement. This is not an Illinois requirement here. And again, the flagging isn't saying this vehicle doesn't have insurance. The flagging is related to a registration directly with the Georgia Department of Motor Vehicles. I would also point to the second district case, Petty, People v. Petty, that I cited to in this brief. It deals with these legislative carve-outs that are made for requirements in the Illinois Vehicle Code that out-of-state drivers, in that case, the stop couldn't be prolonged based on an Illinois insurance requirement. In this case, there wasn't reasonable suspicion to prolong the stop. Here, there's not reasonable suspicion to initiate the stop in the first place based on this requirement because it's subjecting an out-of-state driver to Illinois Vehicular Codes. The code specifically says you may be registered in another state, but you can't be driving on the highway of Illinois without insurance. How is that a problem? Your Honor, because there's no reasonable suspicion that the driver is operating the vehicle without insurance here. The flagging has to do with a registration requirement in Georgia. It doesn't say that there's no valid insurance on this vehicle. That's exactly what Campbell testified to, wasn't it? Didn't he say that he received a response from NCIC, from the Georgia authorities, this is a Georgia vehicle, that the defendant's vehicle was not covered by insurance. What part of that, what am I missing here? If you're Deputy Campbell, why doesn't that tell you at least, gee, I don't think this car may have insurance, I'm going to pull it over and check. Your Honor, it has to do with the actual specific flagging itself here. Again, how Georgia operates its vehicle code is different than Illinois and quite frankly a lot of other states. For example, in Illinois, I have State Farm, I don't go directly to the Department of Motor Vehicles here and show them, this is my insurance, this insurance is valid and registered to this particular vehicle. I don't have to do that, there's no such requirement in Illinois to do such a thing. This is a requirement to take this step to actually register the insurance with the Department of Motor Vehicles that's present in Georgia. Officer Campbell said he had to kind of take a guess as to what exactly it was. And again, both of the articulated reasons for reasonable suspicion here, this window tinting issue and then this leads alert for this Georgia registration requirement type of situation, these both run afoul of the Commerce Clause. It's impossible for a driver to change their window tinting as they cross state lines or change what their insurance covers, what it doesn't cover. It would put an absolute undue burden within the Commerce Clause on traveling between states here. I do want to go back and talk a little bit about the trial court errors here. Because while I argue that the state didn't prove these charges beyond a reasonable doubt here, if this court does find that the state did in fact meet its burden, did prove these charges beyond a reasonable doubt, this case should be remanded due to these trial court errors. And both of these trial court errors went directly to deciding guilt and innocence. Went directly to deciding guilt and innocence on counts one and two here, which are the firearms charges. First, the court ran completely afoul of people via Montgomery. It didn't conduct a Montgomery hearing, and it erred by considering a 2003 cannabis-related felony against Mr. Wallace's credibility here. In fact, the court said that Mr. Wallace's testimony, his word carries, quote, less weight when talking about whether Mr. Wallace had knowledge of those firearms in the glove box. Now, under People v. Montgomery, there's several limiting factors, sort of tests that prohibit a prior felony conviction from being used against one's credibility. The important one here is that 10-year time limit. Mr. Wallace was convicted and released nearly 17 years prior to when he testified in this case. It's important because what the state is tasked with is proving the present alleged conduct. Guilt and innocence should not, in the present case, should not be decided based upon whether or not the defendant here has passed felony convictions. The judge's consideration of that prior felony conviction directly against Mr. Wallace's credibility frustrates the entire purpose that the Illinois Supreme Court handed down in People v. Montgomery. The second… The trial court found the defendant's wife not to be credible with regard to her testimony that the guns belonged to her. Isn't that right? Your Honor, the trial court did call into question both the testimony of Ms. Porter, also Mr. Wallace as well. However, it's Mr. Wallace's knowledge that's the key element here to counts one and two. And the trial court found Mr. Wallace not credible, at least part decided that his weight had less credibility, that his weight carried less word because of a felony conviction that he was released 17 years prior. Additionally, the trial court… I'm sorry, the second trial court error deals with considering irrelevant evidence to find retrospectively that Mr. Wallace had knowledge of the presence of the firearms locked in the glove box. Now, while all charges were tried together in this case, there's effectively two sort of timelines the way I see it. First, there's that initial stop, Officer Campbell arrests Mr. Wallace. Officer Campbell finds those guns and Mr. Wallace is brought back to the jail. That's kind of where the second timeline begins here. We know from video evidence that the time in the jail is at least greater than one hour later and it's at a separate distinct place as opposed to where the stop took place. The judge says that the defendant's arguments about counts one and two, again, the judge calls it compelling here until he considers these much later acts that occurred at the jail. Conduct afterward is irrelevant to showing what Mr. Wallace knew at the time of the stop. Counsel, I want to, before your time runs out, ask you about the obstructing justice count. Is it your claim that this evidence wasn't sufficient to prove the defendant guilty of obstructing justice? Yes, Your Honor. The state, with respect to that charge, to the obstruction of justice charge, also did not meet its burden, Your Honor. Because its burden was the state needed to identify what it was the defendant grabbed and flushed away? No, Your Honor. The state didn't necessarily need to show precisely what the evidence is, but the state did need to show that it was in fact evidence. As it stands here, the state had testimony saying that it was an item. The state didn't present testimony saying that the item was any sort of anything illegal. What do you mean when you say it was evidence? It was something, wasn't it? It was an item, Your Honor. It was something, and it was something that your client apparently thought sufficiently dangerous to be caught in this position that, contrary to the instructions he received from the police, he grabbed it, threw it in the toilet, and flushed it. As a matter of policy, do you think it would be good policy to permit suspects to destroy evidence that the police otherwise have seen, otherwise they were right to seize? Your Honor, first I want to mention that you spoke about Mr. Wallace thinking the item was sufficiently dangerous, that those actions happened. I dispute that he found that the state even showed at all that Mr. Wallace found that the items were dangerous or anything of that nature. Second, I think that the best policy... What inference do you draw as to why the defendant grabbed it and threw it in the toilet and flushed it away? Environmental concerns? Is that what this is about? Your Honor, there's a number of reasons that it could have happened. Give me two. I'm sorry, Your Honor? Give me two. You mentioned there were a number of reasons that could account for this as innocent behavior. I'll settle for two. Sure thing, Your Honor. He could have been upset with the incidents of the day, didn't feel like complying with orders. It could have been something embarrassing instead of something illegal. Your Honor, you said environmental concerns. I don't know how that would necessarily relate here. But in terms of the policy, I think the best policy is the state actually has... I see my time's out. May I finish my answer? Yes. Thank you, Your Honors. The best policy is to make the state actually prove it, not just show that it was an item, show that it was evidence, show that it had some level of evidentiary value. And I will pick this back up on rebuttal. Thank you, Your Honors. Thank you. Mr. Manchin? May it please the court, counsel? I will start my argument by addressing the last questions raised regarding the obstructing justice. I think, Justice Steinman, you're perfectly correct that as a policy, you cannot say that if you completely destroy the evidence, you're not guilty of obstructing justice. The obstructing justice requires, if the defendant just throws something on the street, please pick it up immediately, he's not guilty of obstructing because he has not materially impaired the prosecution. Well, here, where he has completely destroyed the evidence, the item, he has materially impaired. There is material impairment. And how you can say an item the defendant destroys is not evidence is splitting hairs and ignoring the common sense definition of what is evidence. I think the only reasonable explanation of why the defendant threw this away was because he knew it was dangerous for him to be caught with it. The trial judge could draw and did draw the reasonable inference that a hockey puck sized object wrapped in plastic, hidden in somebody's buttocks is more than likely drugs of some kind, because that is a not uncommon means of trying to conceal the evidence. So I think that the obstructing justice was established by the fact that the defendant, through the disobeyed instructions through the item in the toilet and destroyed it completely. The inability to specifically identify what it is, does not mean that it is not evidence. And with respect to the defense actions in fleshing the drugs, I think the trial court properly consider that in terms of determining whether the defendants knowledge of the guns in the car. The it is not uncommon, and it is common. In fact, it's one of the factors that look to in drug cases as for showing deliver intent to deliver, whether or not the defendant is armed or has a gun at the time he possess at the same time he possesses the drugs. So I think that the possession of the drugs can and was properly used to draw an inference that hey, the defendant did in fact possess these guns for the purposes of protecting the drugs that the defendant was carrying. Dealing with prior convictions. The rule is certainly in a jury trial is that before the trier fact can be informed of a prior conviction purposes of considering what weight to give it, determining the credibility of a defendant. The trial court must conduct a hearing and weigh the various factors and decide whether it should be admissible for that purpose. The agreed that the same way process applies in a bench trial as well as a jury trial. I agree that the trial court here aired in in his findings that as a convicted felon the defendant has less credibility. But just addressing my question though because I want to make it clear that the same process should apply in a bench trial as well should have that it should yes. So, here, but your argument is, it wasn't not, it was not plain error, because there was no objection below, and that the errors to still apply without an objection. Yeah objection we'd be very good on the objection basis. Yeah, but yeah it's, it is not clear and obvious error requiring reversal, because the trial court did not rely upon the, the trial courts reliance upon the defendants prior conviction was not so. Well, let me ask it this way. I would say, first prong plain error. I think it's a clear and obvious error, because not only was there no hearing but if I hear you wouldn't have been admissible for that purpose it's too old. So then the question is, was the evidence closely balance isn't that the first prong inquiry. Yes, it is, but I think in this case with the trial courts findings, show that his any reliance upon this improper factor was so, so minimal that it does not require reversal because he rejected the defendants are not because of just because the defense counsel's pointed out the trial court had made some reference to the other evidence the defendant presented about his lack of knowledge of the guts. Yeah, he referenced to it as plausible. But he gets a lot. You, you are involved in this an awful lot. And plausible is a lot better than the usual we hear. That's correct. It's closely balanced and the court mainly rejected it based upon his finding that the wife's testimony that it was her guns and the defendant didn't know it was just simply not credible. With respect to just pausing there again. For our purposes, because we're called on to evaluate all this. Given the extent of evidence presented here. Why should we deem this closely balanced and reverse the weapons conviction for that reason. Well, the question on appeal is not the propriety of the trial courts reasoning, but the property of the trial courts results. So, the invitation to parse the defendant, the trial courts language should be rejected and just affirmed on the basis that the evidence was sufficient to establish that the defense was in possession of the guns. Well, isn't. And the whole question of evaluating whether the evidence is closely balanced. We have on the one hand, the question of how the trier effect muted. And of course here, as opposed to a jury trial. We have the trial court there's trier effect explaining its decision but it's been a jury trial. We just have a guilty verdict, we don't have any explanation by the trier effect as to why or how much weight it gave to people or how much, let's assume the hypothetical the trial court conducted a Montgomery hearing and let in this improper impeachment evidence. When, without the trial courts discussion of how to evaluate the evidence which is unusual, because most tryers in fact don't have that maybe jury wouldn't looking at this record, given the evidence presented by the defense to try to rebut the claim that he knew about the guns in the car wouldn't that cause us to review this as Matt clear and convincing evidence, or excuse me, Matt closely balanced evidence. I do not believe that the trial courts error was sufficient to one sentence reference in a really was a five page finding a fact discussion of the evidence to say, say that the conviction was based upon that that erroneous reference I think is improper. Well you're right that the trial court explained itself but I'm trying to look at it from the point of view of this has been a jury trial we don't have any explanation other than the improper impeachment. And we have all this evidence presented by the defense at that point. The issue for this court me wasn't closely balanced and wouldn't have crossed that threshold. I do not believe so. Go ahead. With respect to the search and seizure issue. The defendant on appeal does not contend that the trial court aired and denying his motion suppress the defendant phrases the issue as a trial counsel was ineffective in the manner in which he presented the motion to suppress. He's not arguing that the trial court was wrong. He said that the manner in which trial counsel presented the issue was ineffective assistance. And he only argues the correctness or question is the correctness is a per turn of the impression he was challenging the trial courts decision as well. Well, only in terms only in terms of trying to establish prejudice through through based on councils ineffective assistance. In effect assistance requires two things defect deficient representation falling below an objective standard or reasonable representation and prejudice. We cannot show defective representation because the same claim that you can't stop somebody based on the tended windows and the report from Georgia about lack of insurance is the same issue being raised below so the claim, raising the truck in the trial court by counsel was did not fall below objective standard. And I think you're correct. As far as the statute saying that if you drive in Illinois on the out of state license license, you need insurance. The report saying that the defendant does not have insurance registered in Georgia as required by Georgia law. So certainly supports a reasonable inference sufficient to make the stop that the defendant did not have insurance. Council Mr draws argued a few moments ago that the state didn't make the argument that you just stated to, I did not raise it, they raised it below but I did not raise it specifically in my brief I, I focused in my brief more on the tenting argument. And I think even under the tenting one, there is the, there is no Illinois case law regarding stopping out of state vehicles. As far as whether it's a proper Terry stop or not. Well I understand you correctly want to make sure you're asserting the defendant trial and appeal both the not argue that the trial court aired by denying the motion to suppress. I'm just saying that on appeal. The defendant is not claiming that the trial court aired. He's claiming that his attorney was ineffective in the manner in which he presented the issue, which is an entirely different question. Why was that. What is. So well because it's understanding of his argument. My, my understanding this argument is that trial counsel was ineffective because he didn't cite the same cases that he cites on appeal. That's how I read his arguments. Okay, go ahead. And as far as stopping out of state car for tinted windows. I cite two cases in my brief from New Jersey and Maryland, which have similar statutes to Illinois, that says that even an out of state car can be stopped for tinted windows to check the registration. So that either for the no insurance reference or the tinted windows that the stop was proper. If there are no further questions I will stand on my brief brief with respect to the issues raised. I see no further questions. Thank you. Mr draws will hear from you on rebuttal. Thank you, Your Honors first I want to to address the the state's arguments related to the trial court errors under Montgomery that is considering Mr. Wallace's prior conviction against his credibility. The state does agree that it applies to to a trial court that's because the prep the propositions that Montgomery stand for trying a defendant for the case at hand not trying a defendant based on past conduct. That's the reason why this exists the state says it was harmless error. I would argue that the courts says directly as a prior as a convicted felon Mr Wallace's word carries less weight. And I don't think that's parsing the trial courts language either directly says it directly says Mr Wallace is less credible for this reason. We know that in these plain error cases and these closely balanced prong of plain error cases we can look at the Illinois Supreme Court cases Naylor and savvy that says evidence is closely balanced, where it's a credibility call before the between the officer and the defendant, and it's closely balanced when the judge is deciding based upon that credibility here. This is this falls directly under in hits every element of that first prong of the plain error rule. I also want to discuss the state's arguments about stop and seizure here. The state argues that I that I didn't say it was trial court error that's that's not correct here I did argue also. I would direct you to page 38 of the opening brief where I did say that this is an ineffective assistance of counsel or alternatively, if this court does find that that defense counsel did raise these these issues this court should examine the trial court error here. The state also says that there is no case you ever argue specifically with the trial court aired by denying the motion to suppress. Yes, I an argument for in the opening brief, and I did, obviously the bulk of it went to ineffective assistant of counsel but but additionally, yes I did argue that in the opening brief, Your Honor, then page 38 and this alternative reference. Would you expand upon it at all. Sure, the at, at the, I guess the the motion to suppress which which was basically a post trial motion at this point the way this, this was conducted below trial counsel did make the arguments that did you in your brief to this court, other than the one reference you just argued that the trial court error. The motion to suppress. I mean, yes, Your Honor, I believe so, and and and further citing cases citing cases like strong citing cases like Patty for the proposition that the trial court erred in in denying this as well, Your Honor. I, the state says that that no case, there is no case for stopping out of state vehicles based on window tinting based, you know, related to that subject matter I would strongly disagree with that. On page 41 of my opening brief I cite people that this court's decision, and people be strong. It says the statute, that's the window tinting statute contains an exception for vehicles registered and other jurisdictions, therefore people from other states can travel into or through Illinois, without any impediment, due to the presence of tinted windows being on being being placed in their way. Deputies Campbell's testimony clear that while he noticed the window tinting, he really stopped this car because of the NCIC message from Georgia regarding insurance, Your Honor, I don't think. Officer Campbell's testimony is clear as to which reason he favored necessarily what's clear is he only points to those two reasons for the basis of his reasonable suspicion, which is invalid here being the window. Assuming you're right that the window tinting isn't valid, but the NC to I know this is what would that be sufficient for reasonable articulable suspicion to stop the vehicle. Your Honor, I believe that the basis of reasonable suspicion would would would suffice there, but again, on those prior arguments, this is again runs afoul of the Commerce clause the subjecting out of state drivers to the Illinois vehicular code. And finally, I want to point out, there's no authority for the state's contention in its brief that it's reasonable for police to pull over any out of state car on the, you know, almost on a fishing exit expedition to see if there's actually an Illinois resident in it. I know of no authority that actually stands for that purpose. So, if there are no further questions, this, Your Honors, this court should reverse Mr Wallace's convictions or alternatively remand for a new trial. Thank you. Thank you, counsel will take your matter under advisement.